**Certiorari Denied, June 29, 2012, No. 33,655**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-072**

**Filing Date:  May 2, 2012**

**Docket No. 31,389**

**SAMUEL E. FOSTER,**

     **Plaintiff-Appellant,**

**v.**

**SUN HEALTHCARE GROUP, INC., PEAK
MEDICAL CORPORATION, PEAK MEDICAL
NM MANAGEMENT SERVICES, INC.,
SILVERSTONE HEALTHCARE OF BLOOMFIELD,
L.L.C. d/b/a BLOOMFIELD NURSING AND
REHABILITATION, and WILLIAM J. KRYSTOPOWICZ,**

     **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Sandra A. Price, District Judge**

Guebert Bruckner P.C.
Terry R. Guebert
Christopher J. DeLara
Tyson R. Hummell
Albuquerque, NM

for Appellant

Hermes Sargent Bates, LLP
Frank Alvarez
Christina Gratke Nason
Dallas, TX

for Appellees

**OPINION**

1

**VANZI, Judge.**

**{1}** Plaintiff Samuel Foster filed suit against Defendants Sun Healthcare Group, Inc., Peak Medical Corporation, and Peak Medical NM Management Services, Inc. (collectively, Defendants) in state district court after a United States District Court for the district of New Mexico (federal court) dismissed his personal injury suit against Defendants for lack of subject matter jurisdiction. New Mexico has a saving statute that provides that "once a suit has been commenced, if it fails for any cause, except negligence in its prosecution, a second suit can be brought within six months and the second suit will be considered a continuation of the first suit." *Amica Mut. Ins. Co. v. McRostie*, 2006-NMCA-046, ¶ 1, 139 N.M. 486, 134 P.3d 773 (alterations, internal quotation marks, and citation omitted); *see* NMSA 1978, § 37-1-14 (1880). After Foster refiled his case in New Mexico state district court (district court), Defendants filed a motion for summary judgment, arguing in part that Foster's suit was untimely and could not be considered a continuation of his federal court suit under Section 37-1-14 because the federal suit failed due to negligence in its prosecution. The district court agreed and granted partial summary judgment in favor of Defendants.

**{2}** We hold that the district court erred in determining that Foster was negligent in the prosecution of his federal court case and that his personal injury claims were time-barred as a result. We reverse.

**BACKGROUND**

**{3}** This lawsuit arises from injuries that Foster suffered on July 18, 2006, while he was a resident at Bloomfield Nursing and Rehabilitation in Bloomfield, New Mexico. On July 1, 2009, Foster filed a personal injury action in federal court and named five Defendants: (1) Sun Healthcare Group, Inc. (Sun Healthcare); (2) Peak Medical Corporation (Peak Medical); (3) Peak Medical NM Management Services, Inc. (Peak NM); (4) Bloomfield Nursing and Rehabilitation (Silverstone); and (5) William J. Krystopwicz. In the complaint, Foster asserted that the federal court had jurisdiction over the matter and that there was complete diversity of citizenship between himself and Defendants as required by the federal statute governing diversity jurisdiction. *See* 28 U.S.C. § 1332(a) (2005) (amended 2011). Three Defendants, Sun Healthcare, Peak Medical, and Peak NM, filed a motion to dismiss for lack of federal subject matter jurisdiction, alleging that Foster failed to demonstrate complete diversity of citizenship between himself and Defendants. *See* Fed. Rules Civ. Proc. Rule 12(b)(1). Foster responded that sufficient facts existed to support his assertion that complete diversity existed. The federal court disagreed.

**{4}** The federal court found that Foster did not properly plead the corporate citizenship of Defendants because he failed to state where Defendants were incorporated, the states where they had their principal places of business, and whether those states were different from the states of incorporation. After further review of the exhibits attached to Defendants' motion to dismiss and the record, the federal court determined that Sun Healthcare and Peak

NM were in fact citizens of New Mexico. Thus, complete diversity did not exist. On November 18, 2009, the federal court dismissed Foster's case without prejudice for lack of subject matter jurisdiction.

**{5}** On December 7, 2009, Foster refiled his suit in district court and asserted it was a continuation of his federal court case pursuant to Section 37-1-14. In lieu of an answer, Defendants filed a motion to dismiss for failure to state a claim and, alternatively, a motion for summary judgment. Defendants argued that Foster's claims were time-barred by the applicable statute of limitations. Defendants also asserted that Foster's federal court case was dismissed "due to negligence in prosecution because diversity jurisdiction was clearly lacking" because, prior to filing his federal court case, Foster had admitted knowledge of the facts that destroyed diversity. According to Defendants, therefore, Section 37-1-14 did not apply, and Foster's instant district court action could not be deemed a continuation of his federal court case. In response, Foster denied that he had previously admitted prior knowledge of Defendants' citizenship, maintained that he filed his federal court action in good faith, and stated that the exhibits submitted by Defendants—several complaints and a court order—spoke for themselves. At a hearing on the matter, the district court noted that although it was clear that there was not diversity between Foster and Peak NM, Foster's filing in federal court could have been due to confusion because Defendants' locations did seem confusing. Nevertheless, the district court decided that diversity was lacking between Foster and Peak NM and that there was negligence in the prosecution of Foster's federal court case. The district court therefore concluded that the protection of Section 37-1-14 was not available to save Foster's suit and entered an order dismissing Foster's personal injury claims as time-barred. Foster filed a motion for reconsideration, which was denied; however, the district court granted Foster's request for leave to apply for an interlocutory appeal, which this Court granted.

**DISCUSSION**

**Standard of Review**

**{6}** As a preliminary matter, as we have noted, Defendants filed a motion to dismiss and, alternatively, a motion for summary judgment. The district court relied on the parties' briefs as well as the exhibits attached to Defendants' pleading in reaching its decision. "Where matters outside the pleadings are considered on a motion to dismiss for failure to state a claim, the motion becomes one for summary judgment[.]" *Knippel v. N. Commc'ns, Inc.*, 97 N.M. 401, 402, 640 P.2d 507, 508 (Ct. App. 1982). We review a district court's grant of summary judgment de novo. *Romero v. Phillip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. We construe all reasonable inferences in favor of the non-moving party and will uphold a grant of summary judgment where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* The moving party has the initial burden of establishing a prima facie case for summary judgment. *Id.* ¶ 10. To make a prima facie showing, the moving party must produce "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Id.* (internal

3

quotation marks and citation omitted). Once the moving party has established a prima facie case, "the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts [that] would require trial on the merits." *Id.* (internal quotation marks and citation omitted). We look to the law governing the issue to determine whether the moving party has established a prima facie case for summary judgment. *See Dunning v. Buending*, 2011-NMCA-010, ¶¶ 12, 15, 149 N.M. 260, 247 P.3d 1145, *cert. denied*, 2011-NMCERT-001, 150 N.M. 558, 263 P.3d 900. Here, the substantive law under which the district court granted summary judgment is the New Mexico saving statute, Section 37-1-14. We begin our analysis with a review of Section 37-1-14 and relevant case law construing such statutes. We then turn to Defendants' motion for summary judgment and the application of the undisputed facts in this case to Section 37-1-14.

**Section 37-1-14: Negligence in Prosecution**.

**{7}**    Section 37-1-14 provides,

> If, after the commencement of an action, the plaintiff fail[s] therein for any cause, except negligence in its prosecution, and a new suit be commenced within six months thereafter, the second suit shall, for the purposes herein contemplated, be deemed a continuation of the first.

District courts of several states have considered whether cases initially dismissed from federal forum for lack of jurisdiction may be saved under statutes similar to ours. They have explained that

> [t]he statute is designed to insure to the diligent suitor the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that, by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts. When that has been done, a mistaken belief that the court has jurisdiction stands on the same plane as any other mistake of law.

*Torres v. Parkview Foods*, 468 N.E.2d 580, 583 (Ind. Ct. App. 1984) (emphasis, internal quotation marks, and citation omitted). Historically, "courts have construed [saving statutes] liberally in furtherance of their purpose—to enable controversies to be decided upon substantive questions rather than upon procedural technicalities." *Wilt v. Smack*, 147 F. Supp. 700, 702 (E.D. Penn. 1957). This Court's interpretation of Section 37-1-14 is consistent with the Pennsylvania court's historical explanation. We have held that Section 37-1-14 is intended to protect those who are diligent and prosecute their case in a non-negligent manner. *Barbeau v. Hoppenrath*, 2001-NMCA-077, ¶ 15, 131 N.M. 124, 33 P.3d 675. Further, New Mexico's policy favoring access to judicial resolutions of disputes is embodied in Section 37-1-14, and when determining whether a plaintiff has been negligent

4

in the prosecution of their suit, we balance the plaintiff's error against this policy. *Amica*, 2006-NMCA-046, ¶ 17.

**{8}** Although we have a liberal policy favoring a litigant's right to his day in court, when a plaintiff fails to exercise due diligence in the prosecution of his or her case, we will find that that suit has failed due to "negligence in prosecution[,]" and the plaintiff cannot benefit from the six-month time for refiling contained in Section 37-1-14. *Barbeau*, 2001-NMCA-077, ¶¶ 14-16. A plaintiff fails to exercise due diligence within the meaning of Section 37-1-14 when he or she brings suit in an improper forum and, at the time of filing, knows or should have reasonably known the facts that defeated that forum's jurisdiction over the plaintiff's case. *Barbeau*, 2001-NMCA-077, ¶¶ 13, 15 (agreeing with the reasoning in *Sautter v. Interstate Power Co.*, 563 N.W.2d 609, 610-11 (Iowa 1997), which found negligence in prosecution when the "plaintiffs had knowledge of the facts that would deny them jurisdiction"). In other words, to survive dismissal, a plaintiff's complaint must have been filed "with an honest but mistaken belief that he was doing so in a court of proper jurisdiction." *Barbeau*, 2001-NMCA-077, ¶¶ 14-15. To be afforded the protection of Section 37-1-14 when commencing an action, "the plaintiff must choose a forum that arguably has the power to decide the matter involved." *Barbeau*, 2001-NMCA-077, ¶ 15.

**{9}** In *Barbeau,* the only New Mexico case on point here, we determined that the plaintiffs' attorney demonstrated "a clear disregard of the elementary requirements of [federal] jurisdiction" which rose to the level of negligence in prosecution. 2001-NMCA-077, ¶ 11; *see also Amica*, 2006-NMCA-046, ¶ 16 (declining to apply *Barbeau*'s reasoning to a case in which the plaintiff filed in an improper state court venue without a thorough investigation as to whether venue was proper). The facts in *Barbeau* are as follows. The plaintiffs were injured in New Mexico and filed a complaint in Oregon federal court two days before the New Mexico statute of limitations ran on their claim. *Barbeau*, 2001-NMCA-077, ¶¶ 1, 5. The plaintiffs sued two defendants, an insurance company and an individual. *Id.* ¶ 1. The federal court case failed for lack of personal jurisdiction and lack of subject matter jurisdiction. *Id.* ¶¶ 3-4. The plaintiffs alleged in their complaint that they and one of the defendants were citizens of Oregon thus demonstrating a lack of diversity on its face. *Id.* ¶ 3. The plaintiffs also conceded that the Oregon federal court lacked personal jurisdiction over the individual defendant. *Id.* ¶ 4. The Oregon federal court dismissed the case and refused to transfer it to New Mexico because it found the plaintiffs were not diligent based on the fact that their attorney "knew or should have known that there was not subject matter jurisdiction at the time he filed the case." *Id.* ¶ 4 (internal quotation marks and citation omitted).

**{10}** The plaintiffs in *Barbeau* then refiled their case against the individual defendant in New Mexico state district court within the six-month time limit pursuant to Section 37-1-14. *Barbeau*, 2001-NMCA-077, ¶ 5. The state district court granted summary judgment in favor of the defendant and dismissed the case with prejudice. *Id.* ¶¶ 1, 6. Reviewing the evidence before the district court de novo, we determined that it supported the court's conclusion as a matter of law that the plaintiffs' federal court case failed due to negligence in its

5

prosecution. *Id.* ¶¶ 6, 16. We reasoned that the plaintiffs' own allegations in their federal court complaint showed that they had knowledge of the facts that defeated diversity jurisdiction, as did their concession that personal jurisdiction was lacking. *Id.* ¶ 16. Further, the plaintiffs made no showing that their filing in federal court was due to an "innocent mistake or an erroneous guess at an elusive jurisdictional fact known only to the defendants or any other circumstance that might serve to excuse what otherwise appear[ed] clearly to be negligence." *Id.* Accordingly, we concluded that, because the plaintiffs failed to file their first case in a forum that they could have reasonably believed had the power to decide the matter, summary judgment for the defendant was proper. *Id.* ¶¶ 15-16; *see also Sautter*, 563 N.W.2d at 611 (upholding the grant of summary judgment based on negligence in prosecution where the plaintiffs could not show they were reasonably unaware of the diversity problem). In sum, so long as a plaintiff has been diligent in his prosecution, a mistake based on confusion does not rise to negligence in prosecution. *Barbeau*, 2001-NMCA-077, ¶¶ 15-16. Against this backdrop, we now review the district court's application of Section 37-1-14 to the facts of this case.

**Defendants Failed to Make a Prima Facie Showing of Negligence in Prosecution**

**{11}** Defendants' motion for summary judgment was based on their allegation that Foster made "judicial admissions" that showed that he had knowledge of the facts that defeated diversity jurisdiction prior to filing his federal court case. Therefore, according to Defendants, Foster was negligent in his prosecution and could not avail himself of the protection afforded by Section 37-1-14. In both the district court and on appeal, Defendants rely exclusively on pleadings in other cases and the federal court's memorandum opinion and order dismissing Foster's suit. Specifically, Defendants submitted the following evidence in support of their motion: (1) Foster's November 16, 2006 district court complaint; (2) Foster's December 11, 2006 voluntary dismissal of the complaint as to corporate Defendants; (3) Foster's July 12, 2007 second amended complaint in district court; (4) September 17, 2008 order dismissing the district complaint for lack of prosecution; (5) July 1, 2009 complaint filed in federal court; (6) November 18, 2009 memorandum opinion and order dismissing the federal court case for lack of prosecution; and (7) December 7, 2009 complaint, which is the subject of the motion to dismiss. Foster asserts that all of the evidence offered by Defendants speaks for itself and does not show that he was negligent in prosecuting his case in the federal forum. For the reasons that follow, we agree with Foster.

1.      **The Evidence Does Not Establish That Foster Knew Defendants' Citizenship When He Filed His Federal Court Complaint**

**{12}** As we have noted, in order to establish that Section 37-1-14 does not apply and Defendants were entitled to summary judgment, Defendants were required to make a prima facie showing that Foster failed to exercise due diligence because he knew or reasonably should have known that diversity was lacking between himself and all Defendants when he filed in federal court, such that filing in that forum was clearly contrary to the elementary

6

requirements of federal jurisdiction. *See Barbeau*, 2001-NMCA-077, ¶¶ 15-17. We review the evidence presented by Defendants in support of their motion for summary judgment.

**{13}** Defendants contend that Foster improperly pled diversity jurisdiction in his federal court complaint and that Foster knew complete diversity was lacking when he filed the complaint because he had previously admitted to knowledge of relevant facts that would have defeated diversity. Defendants state that Foster's federal court complaint, on its face, "alleged numerous facts indicating that each of [Defendants'] principal places of business were likely [in] New Mexico," and thus the complaint constitutes an "admission" demonstrating Foster negligently filed in the federal forum. However, Defendants do not direct us to the specific allegations in the complaint that support their contention, nor do they explain how the facts in the complaint show that Foster knew or reasonably should have known Defendants were corporate citizens of New Mexico within the meaning of federal diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every [s]tate . . . by which it has been incorporated and of the [s]tate . . . where it has its principal place of business[.]"); *Shell Rocky Mountain Prod., LLC v. Ultra Res., Inc.*, 415 F.3d 1158, 1162-63 (10th Cir. 2005) (explaining that the determination of a corporation's principal place of business, and thus its citizenship, is a question of fact that courts consider many factors in determining); *abrogated on other grounds by Hertz Corp. v. Friend*, ___ U.S. ___, ___, 130 S. Ct. 1181, 1193-94 (2010).

**{14}** Defendants contend that Foster's federal court complaint is analogous to the federal complaint that demonstrated the plaintiffs' negligence in *Barbeau*. We disagree. Here, Foster brought suit against four corporations and one individual. Foster stated in his complaint that complete diversity existed and that the federal court had jurisdiction pursuant to 28 U.S.C. § 1332. As to each corporate Defendant, Foster alleged it was a "foreign for[-]profit corporation, doing business in New Mexico," and alleged each corporate Defendant had a registered agent in New Mexico. As to the individual Defendant, Krystopowicz, Foster alleged that he was a resident of Georgia. We recognize that Foster failed to properly plead the citizenship of Defendants. However, viewing the facts in the light most favorable to Foster as we must, his assertions that Defendants were "foreign corporations" and that there was diversity, appears to show that at the time he filed the complaint, Foster believed Defendants were not citizens of New Mexico. *See* 28 U.S.C. § 1332(c)(1); *Romero*, 2010-NMSC-035, ¶ 7. Nowhere in the complaint did Foster allege that Defendants were citizens of New Mexico. Nor did he allege any facts that might enable a court to determine under the applicable Tenth Circuit tests that Defendants were New Mexican citizens. *See Shell Rocky Mountain Prod.*, 415 F.3d at 1162-63 (applying the "total activity" and "visibility test" which may be used "when a corporation has substantial contacts with several states other than that of its incorporation" (internal quotations and citations omitted)), *but see Hertz Corp.*, ___ U.S. at ___, 130 S. Ct. at 1193-94 (rejecting other tests and endorsing the "nerve center" approach to determine a corporation's principal place of business and thus its citizenship for the purposes of diversity jurisdiction).

**{15}** In addition, by presenting the complaint to the federal court, Foster's attorneys certified that to the best of their knowledge, and on information and belief, the factual allegations contained within the complaint were true. Fed. Rules Civ. Proc. Rule 11(b). Unlike *Barbeau*, where the plaintiffs premised their action on diversity jurisdiction but alleged in the complaint that they shared citizenship with one of the defendants, 2001-NMCA-077, ¶ 3, here, we find nothing in Foster's complaint to indicate that his attorneys were not diligent prosecuting their case in the federal forum. Therefore, we find no merit to Defendants' contention that Foster's federal complaint shows on its face that Foster knew or reasonably should have known that there was not complete diversity.

**{16}** Defendants also allege that Foster was negligent in his prosecution of the federal court case because he previously admitted facts that destroyed diversity jurisdiction in earlier district court complaints. In November 2006, Foster—through different counsel—filed a district court personal injury suit arising out of the July 2006 incident in which he was injured. In that complaint, Foster alleged that

1.      [Foster was] a resident of San Juan County, New Mexico.
2.      Defendant SunBridge Healthcare Corporation [was] a for-profit corporation existing under the laws of the State of Delaware, with a principal place of business being . . . Albuquerque, New Mexico. . . . This Defendant [was] believed to be a subsidiary of Defendant Sun Healthcare . . .
3.      Defendant Sun Healthcare . . . [was] a for-profit corporation existing under the laws of the State of Delaware, with a principal place of business being . . . Irvine, California.
4.      Defendant Peak Medical . . . [was] a for-profit corporation that was acquired by and merged into Defendant Sun Healthcare . . . , and now has its principal place of business being that of SunBridge Healthcare Group in Albuquerque, New Mexico.

Defendants contend that paragraph four constitutes an admission by Foster that he knew Peak Medical's principal place of business was in New Mexico. That admission, Defendants argue, requires us to conclude that Foster knew that diversity was clearly lacking when he filed the federal complaint.

**{17}** As an initial matter, we note that Foster's first district court complaint was voluntarily dismissed without prejudice. "[T]he voluntary dismissal of a suit leaves a situation the same as though the suit had never been brought and upon such voluntary dismissal, all prior proceedings and orders in the case are vitiated and annulled[.]" *Becenti v. Becenti*, 2004-NMCA-091, ¶ 9, 136 N.M. 124, 94 P.3d 867 (alterations, internal quotation marks, and citation omitted). In other words, when a case is voluntarily dismissed, it is as if the action was never filed. *Id.* Defendants provide us with no authority that, under these circumstances, a pleading in a case that has been voluntarily dismissed may be used as evidence of knowledge of facts in a later filed suit. Where a party cites no authority to support an argument, we assume no such authority exists. *In re Adoption of Doe*, 100 N.M.

764, 765, 676 P.2d 1329, 1330 (1984). However, we need not decide that issue today because Foster's first district court complaint does not provide evidence that, at the time he filed his federal court action, he knew the location of Peak Medical's principal place of business.

{18}     At best, Foster's first district court complaint demonstrates what Foster believed to be true at the time of its filing, which occurred more than two-and-a-half years prior to the filing of his federal court action. Again, viewing the facts in a light most favorable to Foster, we leave room for the possibility that, over the course of that time, the information available to Foster could have changed or the corporate structure of the companies themselves could have shifted. In any event, paragraph four is so poorly drafted that its meaning is far from clear to us, particularly when read with the other allegations in the complaint. What is clear is that SunBridge's principal place of business is alleged to be in New Mexico, but SunBridge was not a party to Foster's federal court case. Consequently, what Foster may or may not have known about SunBridge is not relevant here. Given such a murkily drafted allegation in which the relationship between Defendants is unclear, and the principal place of business being New Mexico hinges on a defendant that was not a party to the later actions, we cannot say that Foster's first district court complaint contains any admission establishing that Foster had knowledge of Peak Medical's corporate citizenship at that time, let alone more than two-and-a-half years later when he filed the federal court action.

{19}     After Foster voluntarily dismissed his first district court action, on July 12, 2007, he again filed suit in district court against some of the same Defendants who are parties to the instant case. Defendants attached Foster's complaint in that action to their motion for summary judgment to show that Foster had previously alleged that "Silverstone, Peak NM, and Peak [Medical] were all 'doing business as, owning, operating, and/or managing Bloomfield Nursing and Rehabilitation Center,' which is in New Mexico." In their reply brief below, Defendants also attached a district court complaint filed by Foster's current counsel on behalf of a different plaintiff in which they alleged Defendants were "foreign for[-]profit corporation[s] doing business in New Mexico," and identified where their registered agents were located in the state. Defendants argue that these complaints demonstrate that Foster and Foster's counsel's were aware that Defendants did business in New Mexico and, therefore, Foster had knowledge of the facts that defeated diversity jurisdiction. We are not persuaded.

{20}     The determination of the location of a corporation's principal place of business in a federal court diversity action is a question of fact. *Shell Rocky Mountain Prod.*, 415 F.3d at 1162. At the time Foster brought his federal case, the Tenth Circuit applied the "total activity" and "visibility" tests to determine a corporation's citizenship. *Id.* at 1162-63. These tests were applied when a corporation's principal place of business was different from its place of incorporation, and when a corporation operated in more than one state, and they required consideration of a variety of factors, including the location of a corporation's nerve center where its administrative offices are, where its employees are located, and where the corporation's presence is most visible. *See id.* at 1162-63. The fact that Defendants did

9

business in New Mexico was but one factor to be considered in determining their citizenship for the purposes of federal subject matter jurisdiction. In the district court actions, neither the principal place of business nor the citizenship of Defendants was an issue. The mere allegation that Defendants did business in New Mexico does not demonstrate that Foster or his counsel had knowledge of the jurisdictional facts that defeated diversity in federal court.

**2.      Defendants Failed to Establish That Foster Was Negligent in Filing Suit in Federal Court**

**{21}**      Foster does not dispute that his federal court case was dismissed for lack of diversity jurisdiction. However, Foster argues that dismissal for jurisdictional reasons does not automatically give rise to a conclusion that the case failed due to negligence in its prosecution. We agree with Foster's assertion. In any case dismissed for lack of jurisdiction, at some point in the litigation it comes to the court's attention that the facts required to support jurisdiction are clearly lacking. This does not necessarily mean that the plaintiff was negligent in his prosecution at the time he filed the complaint. *See, e.g.*, *Ullom v. Midland Indus.*, 663 F. Supp. 491, 493 (S.D. Ind. 1987) (noting Indiana's saving statute "encompasses all actions in which the plaintiff has failed from any cause except negligence in the prosecution," including actions dismissed for lack of subject matter or personal jurisdiction (internal quotation marks omitted)); *White v. Tucker*, 369 N.E.2d 90, 92 (Ill. App. Ct. 1977) (rejecting the defendant's argument that the Illinois saving statute only applied where the original cause of action was "dismissed upon 'obscure and intricate' jurisdictional grounds," simply requiring that when an original action was dismissed on jurisdictional grounds, it must have been commenced with "an honest but mistaken" belief that jurisdiction was proper); *Torres*, 468 N.E.2d at 582-83 (holding that the plaintiffs would be entitled to the protection of Indiana's saving statute where they filed in federal court, diversity was clearly lacking, but the defendants failed to show the plaintiffs filed there in bad faith). As we have said, there is a distinction between filing a complaint that on its face defeats jurisdiction or when the filing attorney knows or reasonably should have known that the chosen forum did not have jurisdiction, and the filing of an action in an improper forum on a reasonable but mistaken belief that there was jurisdiction there. *Barbeau*, 2001-NMCA-077, ¶¶ 13-16; *compare Torres*, 468 N.E.2d at 582-83 (holding that the plaintiffs could avail themselves of the saving statute where there was no evidence their original action was filed in bad faith); *with White*, 369 N.E.2d at 92 (holding that the saving statute did not apply where the plaintiffs intentionally filed in an improper forum because they believed it to be more favorable for their action).

**{22}**      Defendants attached the federal court opinion dismissing Foster's case to their motion for summary judgment as evidence that Foster's federal court case was dismissed without prejudice after the federal court determined diversity was lacking. This fact is undisputed. Defendants argue that because the federal court determined that Foster failed to carry his burden of showing that there was diversity, he negligently prosecuted his lawsuit. However, despite Defendants contentions, the federal court opinion does not

10

demonstrate that Foster was negligent in the prosecution of his federal case as a matter of law.

**{23}**   Unlike the court order discussed in *Barbeau* where the federal court dismissed the case and refused to transfer it to New Mexico because the attorneys were not diligent in the prosecution, here, the federal court did not find that Foster's attorneys were not diligent in that case, nor did it include any language so indicating, nor did it dismiss the case with prejudice for lack of diligence in prosecution. *See* 2001-NMCA-077, ¶ 4. Instead, after determining that the undisputed evidence showed that there was no diversity between Foster and Peak NM, the federal court went on to analyze the evidence presented by both parties to determine Sun Healthcare's citizenship. The federal court then simply concluded that it lacked subject matter jurisdiction over the case and dismissed Foster's case without prejudice.

**{24}**   *Barbeau* directs us to look at the evidence of what the plaintiff knew at the time he commenced his action. *Id.* ¶¶ 13-16. The federal court's opinion provides an analysis of the evidence offered by both parties in support of their arguments for and against diversity jurisdiction. All of this evidence was presented to the federal court *after* Foster filed his complaint and does not show what Foster knew at the time of filing. To make the factual determination of Defendants Sun Healthcare and Peak NM's citizenship, the federal court primarily relied on the information contained in an affidavit prepared by Defendants' secretary and attached to Defendants' motion to dismiss that set out the corporate structure of each corporate Defendant. This evidence was not before the district court, and it is not before this Court either. Accordingly, we do not consider the evidence referenced in the federal court opinion in our analysis here. Nor do we rely on the federal court opinion as evidence, except for the purpose for which Defendants' attached it to their motion for summary judgment—to support the undisputed facts that Defendants relied on in the dismissal for lack of jurisdiction and that Foster's case was dismissed from federal court due to lack of diversity jurisdiction. *See id.* ¶ 9 (noting that we did not rely on the federal court's opinion except to confirm what appeared to be true based on the undisputed facts to which we applied the law). To the extent that the district court relied on the affidavit discussed in the federal court's opinion in its decision, that reliance was misplaced as that affidavit was submitted after the federal complaint was filed and did not demonstrate that Foster knew or should have known that diversity jurisdiction did not exist when the complaint was filed.

**Dismissal of Foster's Earlier District Court Action for Lack of Prosecution Does Not Impact the Application of Section 37-1-14 to This Case**

**{25}**   Defendants contend that because Foster's earlier district court action was ultimately dismissed for failure to prosecute, the instant district court action cannot be saved by Section 37-1-14. It is true that where a case is timely brought, and later dismissed for failure to prosecute, that dismissal is functionally the same as dismissal for negligence in prosecution so that a later suit filed outside the otherwise applicable statute of limitation could not be saved. *Gathman-Matotan Architects & Planners, Inc. v. State Dep't of Fin. & Admin.*, 109

N.M. 492, 494, 787 P.2d 411, 413 (1990). However, this is not the case here. When a case is dismissed without prejudice for failure to prosecute, the dismissal operates to leave the parties as if no action has been brought at all. *Bankers Trust Co. of Cal. v. Baca*, 2007-NMCA-019, ¶¶ 9, 11, 141 N.M. 127, 151 P.3d 88. After a case is so dismissed, a plaintiff may file a new action within the statute of limitations, and the first suit has no bearing on the later action. *Id.* Here, Foster's earlier district court action was dismissed without prejudice for lack of prosecution in September 2008. Foster filed his federal court case on July 1, 2009, seventeen days before the three year statute of limitations was set to run. *See* NMSA 1978, § 37-1-8 (1976). Because Foster's earlier district court case was dismissed due to lack of prosecution so that it was as if the case had not been brought at all, and because Foster's federal court case was timely filed, the earlier district court action has no bearing on whether Section 37-1-14 applies here.

**{26}** We conclude that Defendants have failed to provide evidence demonstrating that Foster's filing in the federal forum was done in bad faith or that Foster was otherwise negligent in his prosecution. Accordingly, we conclude that Defendants did not make a prima facie showing of negligence in prosecution as a matter of law. The district court's grant of partial summary judgment was improper.

**CONCLUSION**

**{27}** For the foregoing reasons, we reverse the district court's award of partial summary judgment to Defendants and remand to the district court for further proceedings in accordance with this Opinion.

**{28}** **IT IS SO ORDERED.**

_____
 **LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**Topic Index for *Foster v. Sun Healthcare Group, Inc.*, Docket No. 31,389**

**APPEAL AND ERROR**
Interlocutory Appeal
Standard of Review

12

**CIVIL PROCEDURE**
Failure to Prosecute
Failure to State a Claim
Motion to Dismiss
Pleadings
Statute of Limitations
Summary Judgment

**CORPORATIONS**
Foreign Corporations

**JURISDICTION**
Federal Jurisdiction
Subject Matter